*The Law Office of Mark F. Willimann, LLC*
Mark F. Willimann, AZ Bar No. 017556
P.O. Box 91010
Tucson, AZ 85752
Tel: (520) 579-6622
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ARTURO RAMIREZ,<br><br>    Defendant. | CR 07-1060-TUC-JMR<br><br>SENTENCING MEMORANDUM |

Mr. Arturo Ramirez, by and through undersigned counsel, files this Sentencing Memorandum.

Under 28 U.S.C. § 994(j), a statute entitled, "Duties of the Commission," the United States Congress commissioned the Sentencing Commission with the following edict:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence **other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense**, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

Additionally, 18 U.S.C. § 3553(a), ensures that the Court will consider a sentence

that is "sufficient" "but not greater than necessary, to comply with the purposes" of sentencing.

Unquestionably, this District Court is free to impose a non-guideline sentence when the case falls outside the "heartland," when the guideline range fails to reflect properly those § 3553 factors, or when a case "warrants a different sentence regardless." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007).

In reviewing the Pre-Sentence Report prepared in Mr. Ramirez's matter, one cannot miss the fact that up until his discharge from the Army for "high cholesterol," the closing of the Wilmad-Labglass manufacturing company, and his divorce from his wife of 21 years, he had lived an exemplary life. Mr. Ramirez did not jump from job to job; he stayed with the same employer, one for a quarter century, the other, the U.S. Army, for 23 years until his "Honorable" discharge for "high cholesterol" in 2004.

Indeed, Mr. Ramirez had lived an extraordinary life in that it was without any sign of seismic shifts; no alcohol abuse; domestic violence; his children from his marriage to Mildred Ramirez all seem well adjusted and are all productive parts of our society. If the old adage that the "fruit does not fall far from the tree" were any indication of who Mr. Ramirez is as a parent, it could be argued that his children reflect well upon his parenting ability. Paragraph 33 indicates that his three sons are actively employed, or are in school.

Much like the earth that has its cataclysmic events such as volcanic and seismic activity that forever change the existing landscape, Mr. Ramirez has had an upheaval that has culminated in a calculated sentencing guideline range of 18 to 24 months, where the

U.S. Probation Officer is recommending 20 months.

It is suggested here that Mr. Ramirez be considered for a "downward departure" under U.S.S.G. § 5K2.20, "Aberrant Behavior," which requires him to show that:

(1) He committed a single criminal occurrence or a single criminal transaction that (a) was committed without significant planning; (b) was of limited duration; and (c) it represented a marked deviation from an otherwise law-abiding life.

(2) At the same time, Mr. Ramirez also has to prove that his acts did not:

    i. Involve serious bodily injury or death;

    ii. Involve the discharge of a firearm, use of a firearm, or any other dangerous weapon;

    iii. Involve a serious drug trafficking offense; and,

    iv. That he did not have more than one criminal history point; a prior felony in either state or federal court.

As the indictment was amended to include only the "harboring" of illegal aliens, Mr. Ramirez submits that the offense was committed when he paid cash for an additional night for Room 241 of the Super 8 Motel. As a result, there was no evidence that:

(1) Mr. Ramirez ever did it before; hence, it was "a single criminal transaction."

(2) Mr. Ramirez had any involvement with planning it.

(3) Mr. Ramirez ever was involved with this type of criminal activity, or any criminal activity up to this point, so the time was limited to a one-time transaction.

(4) And lastly, up to this point, May 7, 2007, Mr. Ramirez had no known criminal

record.

More importantly, there was no evidence that Mr. Ramirez's acts involved: (1) serious bodily injury or death; (2) use or discharge of any firearm or dangerous weapon; (3) any "serious drug trafficking offenses;" or that he has more than one Criminal History Points. (Paragraph 26 indicates he has "zero" criminal history.)

Furthermore, the Pre-Sentence Report indicates that Mr. Ramirez committed three other acts constituting "criminal conduct."

At Paragraph 27, the Pre-Sentence Report indicated that Mr. Ramirez wrote a "bad check." However, when the U.S. Probation Officer investigated the matter further with the Vineland Municipal Court, it turns out that "no record could be found for this case."

At Paragraph 28, the Pre-Sentence Report points to Mr. Ramirez having a "forged insurance card" in his possession. But upon further reading, the fact remains that Mr. Ramirez was never in actual or constructive possession of that "insurance card," it was in a vehicle that he had stored on a friend's property.

Interestingly, Mr. Ramirez was charged with this offense when the driver, a person called "Mr. Galindo" presented this "insurance card" to the police; there is scant evidence that Mr. Ramirez knew "Mr. Galindo," or in any way authorized his use of this automobile by anyone.

Once again, when the Vineland Municipal Court Clerk is asked to provide further information as to this offense, "no record of the case could be located."

Mr. Ramirez submits that the Court should not consider these matters against him

when the U.S. Probation Officer fails to provide any "judicially noticeable documents" to substantiate their existence. As this Court is well versed, unsupported police reports simply do not provide the impetus necessary to detrimentally effect a defendant's sentence.

Lastly, Paragraph 29, the State of New Jersey has charged Mr. Ramirez with "Tampering with a witness." The basis for this offense was that Mr. Ramirez went to a victim of a crime's residence to entreat her to tell the police that she was lying about what had happened to her in order to secure the release of his friend from custody.

The New Jersey statute, "2C:28-5. Tampering with witnesses and informants;" requires the prosecutor to prove that Mr. Ramirez "induce[d] or otherwise cause a witness or informant to: (1) Testify or inform falsely; (2) Withhold any testimony, information, document or thing; (3) Elude legal process summoning him to testify or supply evidence; or (4) Absent himself from any proceeding or investigation to which he has been legally summoned."

According to the Vineland Police Report, Mr. Ramirez went to a victim's residence to encourage her to tell the police that she had lied. It is expected that the prosecutor is going under the theory of (1), that Mr. Ramirez "induced" the victim, a "witness" to "testify or inform falsely."

However, the only way that Mr. Ramirez could be criminally liable for this offense is if the victim had not lied to the police in the first instance; a fact that has yet to be proven valid. If Mr. Ramirez had gone to the victim's residence with an honest belief that

the victim had actually misrepresented the facts to the police, then no criminal culpability can be proven: Unless the police can prove that Mr. Ramirez knew that the victim had told the police the truth, and he knew that he was trying to get the victim to falsely inform the police about the facts of a case, Mr. Ramirez will not be found culpable for committing this offense.

Further, the fact that these allegations were brought well after Mr. Ramirez was charged with this instant offense, simply does not comport with the "relevant conduct" aspect found under the U.S.S.G. § 1B1.3, and as such is irrelevant and should not have been included in the Pre-Sentence Report. While it was true that these allegation were brought before the Magistrate under a pre-trial release violations hearing, the Magistrate Judge found that, while there was sufficient evidence to establish probable cause, Mr. Ramirez could still be released on the original terms and conditions.

Additionally, the U.S. Probation Officer fails to identify why Paragraphs 27, 28, and 29 are relevant given the fact that two are completely without any legal corroboration, and the third, the "pending" matter, has yet to be resolved. Under our Constitution, a person is still innocent until proven guilty, and while Mr. Ramirez has been proven guilty for his behavior to the Federal offense of "harboring illegal aliens," he maintains an innocent position as to the State offense found in Paragraph 29; he respectfully requests that it not be considered against him.

In sum, for its first half-century, Mr. Ramirez's life was remarkable in the fact that it was un-remarkable: He just lived the American dream; an immigrant who barely spoke

English; joined the Army; worked hard his whole life; owned a restaurant; and raised a family.

It is the second part of his life, the last three years to be exact, that has become noted for its notorious conduct: A child out of wedlock; the inability to find a steady job; and the involvement in alien harboring.

No doubt, this is a tale of two Arturo Ramirezes.

Mr. Ramirez prays that this Court consider the fact that he has an infant to care for; that he had lived a law-abiding life for, more than a half-century; and that this conviction will forever impede his chances of ever obtaining any occupation commensurate to what he was able to do before. He prays that the Court consider a term of supervised probation under U.S.S.G. § 5K2.20, the Aberrant Behavior option for "downward departures."

Respectfully submitted this 13th day of March 2009.

                                      s/Mark F. Willimann
                                      Mark F. Willimann
                                      Representing Mr. Arturo Ramirez